**SUPPRESSED**
**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JUN – 5 2014

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **4:14CR00175 AGF/DDN** |
| Plaintiff, | ) | |
| | ) | NO. |
| v. | ) | |
| | ) | Counts I, II, III, IV and V |
| MARK PALMER, | ) | Counts I, II, IV and V |
| ANTHONY PALMER, | ) | Counts I and II |
| SAMUEL LEINICKE, | ) | Counts I, II and III |
| CHARLES WOLFE, a/k/a "Chuck Wolfe," | ) | Counts I, II and III |
| ROBERT WOLFE, and | ) | Counts I, II and III |
| JOSEPH GABRICK, | ) | |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

### COUNT I

The Grand Jury charges that:

A.    Beginning sometime in 2012, and continuing to on or about the date of this

Indictment, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

**MARK PALMER,**
**ANTHONY PALMER,**
**SAMUEL LEINICKE,**
**CHARLES WOLFE, a/k/a "Chuck Wolfe,"**
**ROBERT WOLFE, and**
**JOSEPH GABRICK,**

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate

together with each other and other persons, both known and unknown to the Grand Jury, to

distribute and to possess with the intent to distribute Schedule I controlled substances and

Schedule I controlled substance analogues intended for human consumption, in violation of Title 21, United States Code, Sections 841(a)(1) and 813.

B.     MANNER AND MEANS OF THE CONSPIRACY

1.     It was part of the drug-trafficking conspiracy that defendants MARK PALMER and ANTHONY PALMER would import synthetic drug chemicals from other countries including China, to various locations in the United States.

2.     It was further part of the drug-trafficking conspiracy that the imported chemicals would often have misleading labels, manifests or declarations regarding contents, in order to avoid detection by law enforcement officers.

3.     It was further part of the drug-trafficking conspiracy that defendants MARK PALMER, ANTHONY PALMER, SAMUEL LEINICKE, and others would liquefy the chemicals through a process of adding denatured alcohol and/or acetone.

4.     It was further part of the drug-trafficking conspiracy that defendants MARK PALMER, ANTHONY PALMER, SAMUEL LEINICKE, and others would spray the liquefied chemicals on herbs, such as Damiana, creating synthetic drugs.

5.     It was further part of the drug-trafficking conspiracy that defendants MARK PALMER, ANTHONY PALMER, SAMUEL LEINICKE, and others would add flavorings, such as "Tasty Puff," to enhance the consumption of the synthetic drugs.

6.     It was further part of the drug-trafficking conspiracy that the synthetic chemicals would contain controlled substances and/or controlled substance analogues, including, but not limited to:

a)     (1-Pentyl-3-(1-naphthoyl) indole, also known as "JWH-018;"

b)     2-Pyrrolidinovalerophenone, also known as "alpha-PVP;"

2

c)      N-(1-Adamantyl)-1-pentyl-1H-indazole-3-carboxamide, also known as "AKB48" and "APINACA;"

d)      (1-Pentyl-1H-indol-3-yl)(2,2,3,3-tetramethylcyclopropyl)methanone, also known as "UR-144;"

e)      [1-(5-Fluoro-pentyl)1H-indol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone, also known as "XLR11" and "5-Flouro-UR-144;"

f)      Quinolin-8-yl 1-(5-fluoropentyl)-1H-indole-3-carboxylate, also known as "5F-PB-22."

7.      It was further part of the drug-trafficking conspiracy that the defendants MARK PALMER, ANTHONY PALMER and SAMUEL LEINICKE would periodically change chemicals in an attempt to avoid federal drug scheduling regulations while still producing synthetic drugs which had the same physiological effect creating a "high" that mimics the effects of a controlled substance.

8.      It was further part of the drug-trafficking conspiracy that defendants MARK PALMER, ANTHONY PALMER, SAMUEL LEINICKE, and others would package the synthetic drugs, consisting of controlled substances and controlled substance analogues, into foil packets, in one, one and a half, three, four, five and ten gram quantities, for sale.

9.      The synthetic products would be consumed primarily by smoking or snorting the substance in order to obtain a "high."

10.      It was further part of the drug-trafficking conspiracy that the synthetic drugs were sold under names, including, but not limited to: "Avalon," "Bizarro," "Black Arts," "Bunker Buster," "Devil's Dank," "Dirty Dirt Devil," "Freedom," "Full Throttle," "Grave Digger," "Golden Leaf," "Head Trip," "Lights Out," "Mad Hatter," and "Vortex."

11.     It was further part of the drug-trafficking conspiracy that "Avalon," "Bizarro," "Black Arts," "Bunker Buster," "Devil's Dank," "Dirty Dirt Devil," "Freedom," "Full Throttle," "Grave Digger," "Golden Leaf," "Head Trip," "Lights Out," "Mad Hatter," "Vortex," and other packaged synthetic drugs would be intended for human consumption although they carried "a not for human consumption" label in an attempt to thwart drug-trafficking laws.

12.     It was further part of the drug-trafficking conspiracy that the organization set up locations for packaging the synthetic drugs in a building located in South St. Louis City, Missouri; a barn and/or out building located in Barnhart, Missouri; and offices located in Bridgeton, Missouri.

13.     It was further part of the drug-trafficking conspiracy that defendants MARK PALMER entered into an agreement to sell packaged synthetic drugs to CHARLES WOLFE, a/k/a "Chuck Wolfe," d/b/a Psychedelic Blur, LLC, which, in turn, would distribute the packaged synthetic drugs to other wholesalers and retail establishments throughout the United States.

14.     It was further part of the drug-trafficking conspiracy that defendants ROBERT WOLFE and JOSEPH GABRICK were involved with CHARLES WOLFE, a/k/a "Chuck Wolfe," d/b/a Psychedelic Blur, LLC, in roles including the sale of synthetic drugs.

15.     It was further part of the drug-trafficking conspiracy that defendants MARK PALMER, ANTHONY PALMER, SAMUEL LEINICKE, and others would also sell a portion of the packaged synthetic drugs to other wholesalers and retail establishments throughout the United States.

All in violation of Title 21, United States Code, Section 846.

## COUNT II

The Grand Jury further charges that:

A.     Beginning in or about 2012, and continuing to on or about the date of this Indictment, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

### MARK PALMER,
### ANTHONY PALMER,
### SAMUEL LEINICKE,
### CHARLES WOLFE, a/k/a "Chuck Wolfe,"
### ROBERT WOLFE, and
### JOSEPH GABRICK,

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, with the intent to defraud and mislead, to:

a)     cause the introduction of misbranded drugs into interstate commerce, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2);

b)     receive and cause the receipt of misbranded drugs in interstate commerce and to deliver and proffer delivery thereof for pay or otherwise, in violation of Title 21, United States Code, Sections 331(c) and 333(a)(2); and

c)     do and cause to be done acts with respect to drugs, while such drugs were held for sale after being shipped in interstate commerce that resulted in such drugs being misbranded, in violation of Title 21, United States Code, Sections 331(k) and 333(a)(2).

B.     MANNER AND MEANS OF THE CONSPIRACY

1.     The allegations set forth in paragraphs 1 through 15 of the Manner and Means section of Count I are re-alleged and fully incorporated herein.

5

2. It was part of the misbranding conspiracy that the defendants would manufacture and package synthetic drugs for purposes of wholesale and retail sale either directly or indirectly through CHARLES WOLFE, a/k/a "Chuck Wolfe," d/b/a Psychedelic Blur, LLC, which would be shipped and sold throughout the United States.

3. It was further part of the misbranding conspiracy that defendants and their retailers falsely and misleadingly referred to their synthetic drug products as "incense," "herbal incense," "potpourri," "herbal sachets," and other erroneous names when, in fact, such products were synthetic drugs intended for consumption in order to obtain a physiological effect of a "high."

4. Each of the drugs was misbranded in at least one of the following respects:

a) the synthetic drugs' packaging did not bear adequate directions for use;

b) the synthetic drugs were falsely labeled in a manner indicating they were not for human consumption when, in fact, the synthetic drugs were intended for human consumption;

c) the synthetic drugs' packaging failed to accurately identify the contents and intended use;

d) the synthetic drugs' packaging did not bear a label containing the name and place of the business, the manufacturer, packer, or distributor; and

e) the synthetic drugs' labeling did not include adequate warnings against unsafe dosages, methods, or durations of administration or application, in such manner and form as were necessary for the protection of users of the drugs.

6

5. Defendants intended to defraud and mislead government authorities regarding the products' status as synthetic drugs with the purpose of avoiding regulation over the drugs and enabling themselves to continue selling the drugs in exchange for money.

C. OVERT ACTS

1. Defendants committed overt acts in furtherance of the conspiracy, including, but not limited to, the following:

a) shipped/transported misbranded synthetic drugs to Psychedelic Blur, LLC, located in Bridgeton, Missouri;

b) shipped/transported misbranded synthetic drugs to Area 51 Gifts and Novelties, located in St. Louis, Missouri;

c) shipped/transported misbranded synthetic drugs to South 94 Bait and Tackle Trading Post, located in St. Charles County, Missouri;

d) shipped/transported misbranded synthetic drugs to Bilbo's Earth Store, located in Springfield, Missouri;

e) shipped/transported misbranded synthetic drugs to wholesalers and retailers throughout the United States;

f) shipped samples of the synthetic drugs to a lab in Virginia for testing, the results of which were fraudulently utilized in the marketing of the synthetic drugs.

All in violation of Title 18, United States Code, Section 371.

## COUNT III

The Grand Jury further charges that:

7

A.     Beginning sometime in 2012, and continuing to on or about the date of this Indictment, with the exact dates unknown to this Grand Jury, in the Eastern District of Missouri and elsewhere,

## MARK PALMER,
## CHARLES WOLFE, a/k/a "Chuck Wolfe,"
## ROBERT WOLFE, and
## JOSEPH GABRICK,

the defendants herein, did conspire with others known and unknown to this Grand Jury, to knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally-derived property of a value greater than $10,000, that is the transfer of funds, such property having been derived from a specified unlawful activity, that is, conspiracy to distribute and possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues for human consumption, in violation of Title 21, United States Code, Sections 841(a)(1), 846, and 813, as described in Count I.

B.     MANNER AND MEANS OF THE CONSPIRACY

1.     The allegations set forth in paragraphs 1 through 15 of the Manner and Means section of Count I are re-alleged and fully incorporated herein.

2.     It was part of the money laundering conspiracy that defendant MARK PALMER formed and used the corporate entities Paggregate, LLC, NGURU, LLC, and Palmcorp, LLC, to manufacture, market and distribute synthetic drugs.

3.     It was further part of the money laundering conspiracy that defendant MARK PALMER used the corporate entities Paggregate, LLC, NGURU, LLC and Palmcorp, LLC, to open bank accounts and disguise the proceeds received from the distribution of synthetic drugs.

8

    4.       It was further part of the money laundering conspiracy that in or about 2012, defendant ROBERT WOLFE began working for and with defendant CHARLES WOLFE, a/k/a "Chuck Wolfe," d/b/a Psychedelic Blur, LLC

    5.       It was further part of the money laundering conspiracy from 2012 through at least September 2013, defendants MARK PALMER, ANTHONY PALMER, and SAMUEL LEINICKE manufactured and distributed synthetic drugs to defendants CHARLES WOLFE, a/k/a "Chuck Wolfe," d/b/a Psychedelic Blur, LLC; ROBERT WOLFE; and JOSEPH GABRICK, d/b/a Blue Sky Solutions, LLC. After the manufacturing process was completed, the finished product was delivered to offices shared by defendants CHARLES WOLFE, a/k/a "Chuck Wolfe," d/b/a Psychedelic Blur, LLC; ROBERT WOLFE; and JOSEPH GABRICK, d/b/a Blue Sky Solutions, LLC.

    6.       It was further part of the money laundering conspiracy that defendant MARK PALMER, d/b/a Paggregate, LLC, invoiced defendants CHARLES WOLFE, a/k/a "Chuck Wolfe," d/b/a Psychedelic Blur, LLC; ROBERT WOLFE; and JOSEPH GABRICK, d/b/a Blue Sky Solutions, LLC, as one entity under the name "Mr. Mo Fan." The invoices were typically addressed as follows: From: "PAggregate, 2025 Zumbehl Road, Ste. 192, MO 63303," to "Mr. Mo Fan."

    7.       It was further part of the of the money laundering conspiracy that defendants CHARLES WOLFE, a/k/a "Chuck Wolfe," d/b/a Psychedelic Blur, LLC, and ROBERT WOLFE sold synthetic drugs to wholesalers and retailers throughout the United States and deposited the proceeds into Psychedelic Blur, LLC's Bank of America, N.A. account ending in 3741.

8.    It was further part of the money laundering conspiracy that from

December 2012 through April 2013, defendant CHARLES WOLFE, a/k/a "Chuck Wolfe," d/b/a

Psychedelic Blur, LLC, caused and authorized the following checks payable to: Paggregate,

LLC, totaling $240,190.50, and Palmcorp, LLC, in the amount $41,600.00, as payment for

synthetic drugs:

| ITEM | DATE | MONETARY TRANSACTION |
|------|------|----------------------|
| 1 | 12/20/2012 | Psychedelic Blur, LLC check number 1075 from Bank of America, N.A. account ending in 3741 to Paggregate, LLC in the amount of $21,700.00. |
| 2 | 02/14/2013 | Psychedelic Blur, LLC check number 1091 from Bank of America, N.A. account ending in 3741 to Paggregate, LLC in the amount of $16,000.00. |
| 3 | 02/15/2013 | Psychedelic Blur, LLC check number 1092 from Bank of America, N.A. account ending in 3741 to Paggregate, LLC in the amount of $14,875.00. |
| 4 | 02/26/2013 | Psychedelic Blur, LLC check number 1098 from Bank of America, N.A. account ending in 3741 to Paggregate, LLC in the amount of $25,000.00. |
| 5 | 02/26/2013 | Psychedelic Blur, LLC check number 1099 from Bank of America, N.A. account ending in 3741 to Paggregate, LLC in the amount of $20,725.00. |
| 6 | 02/26/2013 | Psychedelic Blur, LLC check number 1100 from Bank of America, N.A. account ending in 3741 to Paggregate, LLC in the amount of $25,000.00. |
| 7 | 03/08/2013 | Psychedelic Blur, LLC check number 1105 from Bank of America, N.A. account ending in 3741 to Paggregate, LLC in the amount of $22,812.50. |
| 8 | 03/08/2013 | Psychedelic Blur, LLC check number 1106 from Bank of America, N.A. account ending in 3741 to Paggregate, LLC in the amount of $16,000.00. |
| 9 | 03/08/2013 | Psychedelic Blur, LLC check number 1107 from Bank of America, N.A. account ending in 3741 to Paggregate, LLC in the amount of $16,000.00. |
| 10 | 03/29/2013 | Psychedelic Blur, LLC check number 1121 from Bank of America, N.A. account ending in 3741 to Paggregate, LLC in the amount of $22,800.00. |
| 11 | 03/29/2013 | PSYCHEDELIC BLUR, LLC check number 1122 from Bank of America, N.A. account ending in 3741 to Paggregate, LLC in the amount of $25,000.00. |

| ITEM | DATE | MONETARY TRANSACTION |
|------|------|----------------------|
| 12 | 04/08/2013 | PSYCHEDELIC BLUR, LLC check number 1124 from Bank of America, N.A. account ending in 3741 to Paggregate, LLC in the amount of $14,278.00. |
| 13 | 04/19/2013 | PSYCHEDELIC BLUR, LLC check number 1129 from Bank of America, N.A. account ending in 3741 to Palmcorp, LLC in the amount of $21,600.00. |
| 14 | 04/24/2013 | PSYCHEDELIC BLUR, LLC check number 1130 from Bank of America, N.A. account ending in 3741 to Palmcorp, LLC in the amount of $20,000.00. |

9.     It was further part of the money laundering conspiracy that defendant MARK PALMER, d/b/a Paggregate, LLC, caused and authorized the deposit of over $1,000,000.00 into Paggregate, LLC's Bank of America, N.A. account ending in 7087.

10.    It was further part of the money laundering conspiracy that in June 2013, defendant JOSEPH GABRICK began working for and with defendant CHARLES WOLFE, a/k/a "Chuck Wolfe," d/b/a Psychedelic Blur, LLC.  On or about June 20, 2013, defendant JOSEPH GABRICK formed Blue Sky Solutions, LLC, to purchase and distribute synthetic drugs.

11.    It was further part of the money laundering conspiracy that defendant JOSEPH GABRICK used Blue Sky Solutions, LLC, to open bank accounts and disguise the proceeds received from the distribution of synthetic drugs.

12.    It was further part of the money laundering conspiracy that defendants CHARLES WOLFE, a/k/a "Chuck Wolfe," d/b/a Psychedelic Blur, LLC; and JOSEPH GABRICK, d/b/a Blue Sky Solutions, LLC, shared office and storage space in Bridgeton, Missouri.

13.    It was further part of the money laundering conspiracy that defendants CHARLES WOLFE, a/k/a "Chuck Wolfe," d/b/a Psychedelic Blur, LLC; JOSEPH GABRICK, d/b/a Blue Sky Solutions, LLC, instructed and/or caused their wholesale and retail clients to

11

make their checks for synthetic drugs payable to: NGURU, LLC, and Palmcorp, LLC, instead

of: Psychedelic Blur, LLC, and/or Blue Sky Solutions, LLC, as payment for synthetic drugs:

| ITEM | DATE | MONETARY TRANSACTION |
|------|------|----------------------|
| 1 | 06/05/2013 | Tidwell Corporation check number 2220 from AustinBank account ending in 6989 to Palm Corp in the amount of $19,400.00. |
| 2 | 06/05/2013 | Tidwell Corporation check number 2234 from AustinBank account ending in 6989 to Palm Corp in the amount of $19,400.00. |
| 3 | 06/05/2013 | Grey Industries, Inc. check number 3722 from BancFirst account ending in 3723 to Palm Corp in the amount of $16,958.00. |
| 4 | 06/06/2013 | Last Place on Earth Wells Fargo Cashier's Check 0933500576 to Palm Corp in the amount $35,000.00. |
| 5 | 06/08/2013 | Puff n Stuff check number 4471 from Guarantee Bank and Trust Co. account ending in 8670 to Palm Corp in the amount of $15,300.00. |
| 6 | 06/08/2013 | Puff n Stuff check number 4473 from Guarantee Bank and Trust Co. account ending in 8670 to Palm Corp in the amount of $15,300.00. |
| 7 | 06/08/2013 | Puff n Stuff check number 4475 from Guarantee Bank and Trust Co. account ending in 8670 to Palm Corp in the amount of $15,300.00. |
| 8 | 06/14/2013 | Last Place on Earth Wells Fargo Cashier's Check 0933500582 to Palm Corp in the amount $55,000.00. |
| 9 | 06/15/2013 | Puff n Stuff check number 4531 from Guarantee Bank and Trust Co. account ending in 8670 to Palm Corp in the amount of $23,400.00. |
| 10 | 06/17/2013 | Tidwell Corporation check number 2251 from Austin Bank account ending in 6989 to Palm Corp in the amount of $30,563.00. |
| 11 | 06/20/2013 | Puff n Stuff check number 4535 from Guarantee Bank and Trust Co. account ending in 8670 to Palm Corp in the amount of $20,050.00. |
| 12 | 07/08/2013 | Puff n Stuff check number 4548 from Guarantee Bank and Trust Co. account ending in 8670 to Palm Corp in the amount of $12,500.00. |
| 13 | 07/09/2013 | Puff n Stuff check number 4552 from Guarantee Bank and Trust Co. account ending in 8670 to Palm Corp in the amount of $20,549.00. |
| 14 | 07/16/2013 | South 94 Bait & Tackle Trading Post check number 2877 from 5th/3rd Bank account ending in 0866 to NGURU, Inc. in the amount of $17,663.00. |

| ITEM | DATE | MONETARY TRANSACTION |
|---|---|---|
| 15 | 07/16/2013 | South 94 Bait & Tackle Trading Post check number 2879 from 5th/3rd Bank account ending in 0866 to NGURU, Inc. in the amount of $16,100.00. |
| 16 | 07/16/2013 | Smoke Sensations Nights of Rave, LLC check number 2013 from 5th/3rd Bank account ending in 08233 to NGURU, Inc. in the amount of $10,275.00. |
| 17 | 09/06/2013 | South 94 Bait & Tackle Trading Post check number 2977 from 5th/3rd Bank account ending in 0866 to NGURU, Inc. in the amount of $12,363.00. |
| 18 | 09/19/2013 | South 94 Bait & Tackle Trading Post check number 3012 from 5th/3rd Bank account ending in 0866 to NGURU, Inc. in the amount of $12,276.00. |
| 19 | 09/19/2013 | Smoke Sensations Nights of Rave, LLC check number 2050 from 5th/3rd Bank account ending in 08233 to NGURU, Inc. in the amount of $11,550.00. |

14.   It was further part of the money laundering conspiracy that from July 2013 through August 2013, defendant JOSEPH GABRICK, d/b/a Blue Sky Solutions, LLC, caused and authorized the following checks payable to: NGURU, LLC, totaling $99,608.00, as payment for synthetic drugs:

| ITEM | DATE | MONETARY TRANSACTION |
|---|---|---|
| 1 | 07/14/2013 | Blue Sky Solutions, LLC check number 1003 from Bank of America, N.A. account ending in 0846 to NGURU, Inc. in the amount of $24,849.00. |
| 2 | 08/04/2013 | Blue Sky Solutions, LLC check number 1026 from Bank of America, N.A. account ending in 0846 to NGURU, Inc. in the amount of $40,000.00. |
| 3 | 08/05/2013 | Blue Sky Solutions, LLC check number 1027 from Bank of America, N.A. account ending in 0846 to NGURU, Inc. in the amount of $34,759.00. |

All in violation of Title 18, United States Code, Sections 1957 and 1956(h).


## COUNT IV

The Grand Jury further charges that:

13

Beginning sometime in 2012, and continuing to on or about the date of this Indictment, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

**MARK PALMER and
ANTHONY PALMER,**

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, to import Schedule I controlled substances and Schedule I controlled substance analogues intended for human consumption as provided in Title 21, United States Code, Section 813, into the United States from a place outside thereof.

All in violation of Title 21, United States Code, Sections 952, 960(a)(1), 960(b)(3), and 963.

## COUNT V

The Grand Jury further charges that:

A.     Beginning sometime in 2012, and continuing to on or about the date of this Indictment, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

**MARK PALMER and
ANTHONY PALMER,**

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, to receive, conceal, buy, sell or in any manner facilitate the transportation of merchandize after importation, knowing the same to have been imported or brought into the United States contrary to law, to wit: merchandise imported with false, forged, or fraudulent invoice or other document or paper, in violation of Title 18, United States Code, Section 545.

B.     OVERT ACTS

        1.     Defendants committed overt acts in furtherance of the conspiracy, including, but not limited to, causing the shipment of chemicals and controlled substance analogues from the Country of China into the United States, including, but not limited to, the following:

| DATE | ADDRESSEE | MANIFESTED CONTENTS | LAB ANALYSIS |
|---|---|---|---|
| 01/25/2013 | Mark PALMER, Paggregate | Sample of Antioxidant | AKB48 |
| 04/23/2013 | Tony PALMER | Sodium triphosphate same | XLR-11 |
| 04/23/2013 | Tony PALMER | Sodium triphosphate same | XLR-11 |
| 06/18/2013 | Tony PALMER, NGURU | Brightener 806 | JWH-018, AB-Fubinaca |
| 06/19/2013 | Tony PALMER, NGURU LLC | Sample | AB-Fubinaca |
| 09/12/2013 | Tony PALMER, Knights Wholesale | Tylose | AB-Fubinaca |
| 09/24/2013 | Tony PALMER, Mystic Wholesale LLC | Samples of Calcium Carbonate | 5F-AB-Pinaca |
| 09/28/2013 | Anthony PALMER, Mystic Varehouse | Metal Cleaning Power | FUB-PB-22 |
| 12/13/2013 | Mark PALMER, Palmcorp | Ammonium polyphosphate | 5F-AB-Pinaca |

2. Defendants would transport the received chemicals and controlled substance analogues to locations in Missouri for purposes of manufacturing synthetic drugs.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 21, United States Code, Section 853(a), upon conviction of an offense in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 813, as set forth in Count I of this Indictment, the defendants MARK PALMER, ANTHONY PALMER, SAMUEL LEINICKE, CHARLES WOLFE, a/k/a "Chuck Wolfe," ROBERT WOLFE, and JOSEPH GABRICK shall forfeit to the United States of America:

a) any property, constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of such violations;

b) any property used, or intended to be used, in any manner or part to commit or to facilitate the commission of such offenses; and

c) a sum of money equal to the total property constituting, or derived from, any proceeds obtained directly or indirectly as a result of such violations.

2. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Sections 1957 and 1956(h), as set forth in Count III of the Indictment, the defendants MARK PALMER, CHARLES WOLFE, a/k/a "Chuck Wolfe," ROBERT WOLFE, and JOSEPH GABRICK shall forfeit to the United States of America:

a)   any property, real or personal, involved in said offense or any property, real or personal, traceable to such property; and

b)   a sum of money equal to the total value of property, real or personal, involved in said offense and all property, real or personal, traceable to such violations.

3.   Pursuant to Title 21, United States Code, Section 853(a) and 970, upon conviction of an offense in violation of Title 21, United States Code, Sections 952, 960, and 963, as set forth in Count IV of this Indictment, the defendants MARK PALMER and ANTHONY PALMER shall forfeit to the United States of America:

a)   any property, constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of such violations;

b)   any property used, or intended to be used, in any manner or part to commit or to facilitate the commission of such offenses; and

c)   a sum of money equal to the total property constituting, or derived from, any proceeds obtained directly or indirectly as a result of such violations.

4.   Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of a conspiracy to violate section Title 18, United States Code, Section 545, in violation of Title 18, United States Code, Section 371, as set forth in Count V of the Indictment, the defendants MARK PALMER and ANTHONY PALMER shall forfeit to the United States of America:

a)   any property, real or personal, which constitutes or is derived from proceeds traceable to said violations; and

b)   a sum of money equal to the total property constituting, or derived from, any proceeds obtained directly or indirectly as a result of such violations.

17

5.   Specific property subject to forfeiture includes, but is not limited to, the following:

| ITEM | PROPERTY DESCRIPTION | APPROXIMATE VALUE |
|---|---|---|
| a | U.S. currency – 1901 Williamstown Drive, St. Peters, MO | $ 109,190.00 |
| b | U.S. currency – 13765 St. Charles Rock Road, Suite 101/102 Bridgeton, MO | $    7,780.00 |
| c | Bank of America, N.A. account ending in 3002 | $   60,759.28 |
| d | Bank of America, N.A. account ending in 5622 | $ 137,416.16 |
| e | Bank of America, N.A. account ending in 7087 | $    8,718.64 |
| f | Bank of America, N.A. account ending in 7676 | $   16,200.50 |
| g | Bank of America, N.A. account ending in 7663 | $      502.16 |
| h | Bank of America, N.A. account ending in 2715 | $   92,280.33 |
| i | proceeds from Bank of America, N.A. Cashier's Check #0981700203 | $ 18,600.00 |
| j | proceeds from Bank of America, N.A. Cashier's Check #0981700204 | $ 26,400.00 |
| k | proceeds from Bank of America, N.A. Cashier's Check #0981700205 | $ 21,200.00 |
| l | proceeds from Bank of America, N.A. Cashier's Check #0981700206 | $ 19,800.00 |
| m | proceeds from Bank of America, N.A. Cashier's Check #0981700207 | $ 14,000.00 |
| n | proceeds from Kaskaskia Valley Credit Union Cashier's Check #4907 | $ 100,000.00 |
| o | the real property located at 660 Erica Drive located in Granite City, Madison County, Illinois, identified by parcel number 172-20-15-02-204-017 | $ 165,000.00 |

| ITEM | PROPERTY DESCRIPTION | APPROXIMATE VALUE |
|-------|---------------------|-------------------|
| p | the real property totaling approximately 21.13 acres located in the Carmi Township, White County, Illinois, identified by parcel number 13-22-300-007 | $ 82,000.00 |
| q | assorted carrier and packaging materials, including, but not limited to: 122 empty retail packages with various names and sizes, 62 digital scales, 5 commercial heat sealers, 7 packaging/flat boxes used to ship the products, 54 bags of unused carrier material, and 26 boxes of unused carrier material | unknown |

6.    If any of the property described above, as a result of any act or omission of the

defendants:

        a)    cannot be located upon the exercise of due diligence;

        b)    has been transferred or sold to, or deposited with, a third party;

        c)    has been placed beyond the jurisdiction of the court;

        d)    has been substantially diminished in value; or

        e)    has been commingled with other property which cannot be divided

without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p).

A TRUE BILL.


_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
JAMES C. DELWORTH, #29702MO
ERIN O. GRANGER, #53593MO
Assistant United States Attorneys